[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 23, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-11303

_____

D. C. Docket No. 03-00182-CR-2-UWC-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

KENNETH K. LIVESAY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**ON REMAND FROM THE UNITED STATES SUPREME COURT**

Before HULL and MARCUS, Circuit Judges, and BARZILAY[*], Judge.

HULL, Circuit Judge:

_____

[*]Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting
by designation.

This case is before us on remand from the United States Supreme Court for reconsideration in light of Gall v. United States, 552 U.S. __, 128 S. Ct. 586 (2007).  Livesay v. United States, __ U.S. __, 128 S. Ct. 872, 872-73 (2008).  In this $1.4 billion fraud scheme, defendant-appellee Kenneth K. Livesay, the former Assistant Controller and Chief Information Officer ("CIO") of HealthSouth Corporation who played a major role in the fraud, was sentenced to 60 months' probation, with the first 6 months to be served as home detention.  This panel previously vacated Livesay's non-custodial sentence.  See United States v. Livesay (Livesay II), 484 F.3d 1324, 1325-26 (11th Cir. 2007).[1]  After reconsideration in light of Gall and affording substantial deference to the district court's sentencing determinations, we conclude that the district court committed Gall procedural error, and thus we must vacate Livesay's sentence and remand.

## I.  FACTUAL BACKGROUND

Earlier decisions of this Court outline the $1.4 billion criminal fraud scheme at HealthSouth.  See United States v. Martin, 455 F.3d 1227, 1230-31 (11th Cir.

---

[1]Our Livesay II decision was this Court's second review of Livesay's sentence.  In United States v. Livesay (Livesay I), 146 F. App'x 403, 405 (11th Cir. 2005), we vacated and remanded Livesay's sentence of probation after concluding that the record provided a "scant basis to assess" the reasonableness of that sentence.  On remand after Livesay I, the district court again sentenced Livesay to probation, and we again reversed, determining the sentence to be unreasonable.  See Livesay II, 484 F.3d at 1325-26.  Livesay appealed from our decision in Livesay II, and the Supreme Court remanded to us for this reconsideration in light of Gall.  See Livesay, __ U.S. at __, 128 S. Ct. at 872-73.

2006); <u>United States v. McVay</u>, 447 F.3d 1348, 1349-50 (11th Cir. 2006).

Accordingly, in this opinion, we provide only a brief overview of that general scheme. We then detail Livesay's specific role in the fraud, as outlined in Livesay's Presentence Investigation Report ("PSI").[2]

At some point in the early to mid-1990s, HealthSouth officials realized that HealthSouth's financial results were failing to produce sufficient earnings-per-share to meet the expectations of Wall Street analysts. Various HealthSouth officials, including Livesay, became aware that the earnings shortfall created a substantial risk that, unless the earnings-per-share were artificially inflated, the earnings would fail to meet analyst expectations, and the market price of HealthSouth's securities would decline.

Therefore, from at least 1994 until March 2003, a group of HealthSouth officials "conspired to artificially inflate HealthSouth's reported earnings and earnings per share, and to falsify reports about HealthSouth's overall financial condition." <u>Martin</u>, 455 F.3d at 1230. The officials "made, and directed accounting personnel to make, false and fraudulent entries in HealthSouth's books and records for the purpose of falsely reporting HealthSouth's assets, revenues, and earnings per share and in order to defraud investors, banks, and lenders." <u>Id.</u>

---

[2]Before the district court, both Livesay and the government withdrew all objections to the PSI.

For over ten years from April 1989 to November 1999, Livesay was the Assistant Controller in HealthSouth's accounting department.[3] According to the PSI, during his time as Assistant Controller, Livesay had access to all of the financial information on HealthSouth's balance sheets and income statements. As Assistant Controller, Livesay directly assisted the Controller and the Chief Financial Officer in preparing the financial statements and reports that HealthSouth was required to file with the Securities and Exchange Commission ("SEC"). Senior executives issued instructions to defendant Livesay regarding the desired earnings-per-share, and Assistant Controller Livesay and HealthSouth's accounting staff met to discuss ways to meet Wall Street's earnings-per-share expectations.

More specifically, Livesay, as Assistant Controller, made false entries in HealthSouth's books and records to artificially inflate the company's earnings-per-share. Livesay also managed and supervised others in manipulating HealthSouth's books and records, instructing HealthSouth's accounting staff to alter certain accounts so as to inflate HealthSouth's earnings-per-share. Livesay participated in the preparation of HealthSouth's 1998 quarterly and annual reports that were filed with the SEC, and Livesay fully knew that the reports materially misstated HealthSouth's net income, revenue, earnings-per-share, assets, and liabilities. For

---

[3]In late 1999, Livesay became the CIO of HealthSouth.

example, HealthSouth's pre-tax income was overstated by approximately $440,000,000 in 1997 and $635,000,000 in 1998.

This massive fraud, in which Livesay directly participated for over five years, impacted many victims. After the conspiracy was uncovered in March 2003 and the SEC temporarily suspended trading in HealthSouth stock, the total drop in the value of outstanding HealthSouth stock was approximately $1.4 billion. Many shareholders had invested their life savings in HealthSouth stock, which plummeted to pennies per share. This fraud also affected many others, including: (1) HealthSouth employees, many of whom were long-time employees close to retirement, who suffered by either losing their job or their retirement savings that was invested in the company's stock ownership plan or pension fund; (2) employees of contractors who were dependent on HealthSouth contracts for income; (3) banks and other lenders who loaned money to HealthSouth based on false financial information; (4) health-service competitors who lost business or financing due to HealthSouth's false financial representations; and (5) members of the community who benefited from HealthSouth's charitable activities.

## II.  PROCEDURAL HISTORY

### A.    Guilty Plea and Advisory Guidelines Range

Livesay pled guilty to an information charging him with: (1) conspiracy to

commit wire and securities fraud, in violation of 15 U.S.C. §§ 78m(a), (b)(2)(A)-(B) and (b)(5), and 78ff and 18 U.S.C. §§ 371 and 1343, et al. (Count One); and (2) falsification of financial information, in violation of 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), 78ff, and 18 U.S.C. § 2 (Count Two). The information also included a forfeiture count.

The PSI set Livesay's base offense level at 6, pursuant to U.S.S.G. § 2F1.1(a).[4] Livesay's adjusted offense level was 28, however, due to four enhancements reflecting the magnitude of the fraud and his significant role in it. The enhancements were: (1) 18 levels, pursuant to U.S.S.G. § 2F1.1(b)(1)(S), because the loss amount exceeded $80 million; (2) 2 levels, pursuant to U.S.S.G. § 2F1.1(b)(2)(A), because the offense involved more than minimal planning; (3) 2 levels, pursuant to U.S.S.G. § 2F1.1(b)(5)(C), because the offense involved sophisticated means; and (4) 3 levels, pursuant to U.S.S.G. § 3B1.1(b), for Livesay's role in the offense as a manager or supervisor. After a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, Livesay's adjusted offense level was 28. With an offense level of 28 and a criminal history category of I, Livesay's advisory Guidelines range was 78 to 97 months' imprisonment.

---

[4]The parties stipulated that the appropriate version of the Guidelines was the November 1998 edition; accordingly, all Guidelines citations are to the November 1998 edition unless otherwise noted.

The government filed a U.S.S.G. § 5K1.1 motion for downward departure, based on Livesay's cooperation and substantial assistance. The government noted that Livesay: (1) met whenever needed with several government agencies, each of which had a substantial need for his assistance; (2) met with the forensic auditor reconstructing HealthSouth's books and records; (3) spent many hours reviewing financial statements and other documents; (4) provided the government with critical documents evidencing the fraud; (5) helped quantify the fraud; and (6) facilitated guilty pleas from other co-conspirators and the prosecution of others yet to be convicted.

**B.      First Sentencing in June 2004**

At Livesay's first sentencing, the government's § 5K1.1 motion recommended a downward departure of 3 levels (from 28 to 25) and a sentence of 60 months' imprisonment. The district court granted the government's § 5K1.1 motion, but departed downward <u>18 levels</u>, to an offense level of 10. <u>Livesay I</u>, 146 F. App'x at 404. Offense level 10, combined with Livesay's criminal history category of I, yielded an advisory Guidelines range of 6 to 12 months' imprisonment. Because Livesay's Guidelines range of 6 to 12 months' imprisonment fell within "Zone B" of the sentencing table, the Guidelines gave the district court the option of sentencing Livesay to probation and 6 months' home

7

detention without any additional Guidelines departures.  See U.S.S.G. §§

5B1.1(a)(2), 5C1.1(c)(3) (permitting a sentence of probation, subject to certain

conditions inapplicable here, if a defendant's applicable advisory Guidelines range

is within "Zone B").  The government objected to the reasonableness of the

§ 5K1.1 departure.

Alternatively, the government asked that Livesay at least be sentenced to the

maximum sentence in that range (12 months' imprisonment).  The district court

nevertheless sentenced Livesay to 60 months' probation, with the first 6 months to

be served on home detention, pursuant to U.S.S.G. §§ 5B1.1(a)(2) and

5C1.1(c)(3).[5]  The district court imposed a $10,000 fine and forfeiture of $750,000.

The government appealed, which resulted in our Livesay I decision.  In

Livesay I, this Court vacated Livesay's sentence and remanded Livesay's case to

the district court for resentencing.  Livesay I, 146 F. App'x at 405.  This Court

concluded that the sentencing court "failed entirely to address specifically the §

5K1.1 factors or otherwise to state reasons supporting the extent of its departure."

_____

[5]After departing downward to an offense level of 10, the district court was able to sentence Livesay to 60 months' probation and 6 months' home detention without any additional Guidelines departures because U.S.S.G. §§ 5B1.1(a)(2) and 5C1.1(c)(3) permit a sentence of probation, subject to certain conditions inapplicable here, if a defendant's applicable advisory Guidelines range is within "Zone B" of the sentencing table.  Because Livesay's offense level was 10 and criminal history category was I, Livesay fell within Zone B on the sentencing table.  Thus, by imposing 6 months' home detention, the district court was able to sentence Livesay to 60 months' probation.  See U.S.S.G. §§ 5B1.1(a)(2), 5C1.1(c)(3).

Id.  This Court further concluded that "[w]e do not say that every § 5K1.1 factor must be separately addressed in the order of judgment and conviction; we say only that this record fails to provide the minimum indicia required to allow us to review for reasonableness."  Id.

## C.    Resentencing in December 2005

This current appeal is from the resentencing in December 2005.  As discussed later, the district court judge added very little to the record in this resentencing and basically made it clear he was simply reimposing the same sentence on remand.  We outline what the brief seventeen-page resentencing transcript shows.

This brief transcript shows that the district court actually began Livesay's resentencing hearing with "preliminary remarks," in which the district court commented that "[l]urking not too far in the background of this sentencing is the jury's verdict in the Richard Scrushy case."  Richard Scrushy was the Chief Executive Officer of HealthSouth at all times pertinent, and he was acquitted by the jury in his trial.  The district court, speaking "not as one of twelve Article III judges of the court, but as the Chief Judge of the Northern District of Alabama," observed that he knew of no allegations that the jury in the Scrushy case had been in any way compromised.  The district court publicly thanked the Scrushy jury for

its "tremendous public service," and observed that before attacking the jury's verdict, "it is important to reflect on the fact that we did not sit here in the courtroom and hear and consider all of the evidence, as the jurors did."

The district court then noted that, in Livesay's case, this Court had directed the district court to outline in some detail the factors on which it relied in giving the § 5K1.1 departure and its reasons for the extent of the departure. The government renewed its § 5K1.1 motion, but in light of Livesay's continued substantial assistance since the first sentencing, recommended 20 months' imprisonment[6] (i.e., less than its recommendation for 60 months' imprisonment at the first sentencing).[7]

The district court again granted the government's § 5K1.1 motion and said it was "basically reimposing the original sentence." The district court did make specific § 5K1.1 findings that the significance and truthfulness of Livesay's information and testimony, as well as the nature and extent of his assistance, was "extraordinarily high" and warranted an "extraordinary departure." The district court further found that Livesay's assistance was "very timely" and warranted

---

[6]The government did not make a specific recommendation as to how many levels downward the district court should depart within the advisory Guidelines range.

[7]Between Livesay's first sentencing and resentencing, Livesay testified for the government at Scrushy's trial. Livesay also testified for the government at the trial of Sonny Crumpler and aided the government in preparing for both Scrushy's and Crumpler's trials.

"extraordinary consideration." The district court acknowledged that Livesay's "actions were not sufficient to meet the legal standards for withdrawing from a conspiracy," but nevertheless stated that it was "impressed with the fact that from just an ordinary, common sense understanding, [Livesay] did substantially withdraw from the conspiracy."

The district court then repeated the same earlier § 5K1.1 downward departure and departed downward 18 levels to an offense level of 10, which once again left Livesay with an advisory Guidelines range of 6 to 12 months' imprisonment.

At that point, the government asked to be heard before the district court imposed its final sentence. While the government acknowledged that Livesay was "well deserving of a downward departure," the government stressed that Livesay also "was a key player, a significant cog, in the operation of this fraud at HealthSouth for a number of years." The government emphasized that although Livesay "did come forward early," he nevertheless "didn't come forward until the fraud itself was revealed." The government further observed that Livesay's "handiwork as one of the mechanics" of the fraud was reflected in the fraudulent forms that HealthSouth filed with the SEC. The government stressed the "need for deterrence" in sentencing Livesay, and stated its belief that some prison "sentence

11

of significance" was necessary in light of the sentencing factors found in 18 U.S.C. § 3553(a). The government renewed its request for a sentence of 12 months' imprisonment under the adjusted Guidelines range found by the district court.

The district court then summarily stated, "If I'm wrong on the extent of the departure which I have just made, I believe that the sentence I'm about to impose is the most appropriate sentence in this case in consideration of the Booker case."[8] In other words, even without the § 5K1.1 departure, the district court would have made the same variance under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), from the advisory Guidelines range of 78 to 97 months' imprisonment. The district court proceeded to sentence Livesay to 60 months' probation (the first 6 months to be served on home detention, which Livesay already had done). The district court reimposed the $10,000 fine and forfeiture of $750,000, both of which Livesay had already paid.

With regard to the sentencing factors in § 3553(a), the district court stated that it viewed the sentence as "appropriate" based on the "nature and circumstances" of Livesay's crimes; Livesay's "history and personal characteristics"; the "need for this sentence to reflect the seriousness" of the crimes to which Livesay pled guilty; the need to "promote respect for the law, and to

---

[8]See United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

provide just punishment"; "and to afford adequate deterrence." The district court further stated that it considered the sentence "justified in order to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," and listed the sentences imposed on twelve other HealthSouth co-conspirators as follows:

> In the cases arising out of this conduct, Weston Smith received 27 months [imprisonment]; William Owens, 27 months [imprisonment]; Emery Harris, five months [imprisonment]; Angela Ayers, 48 months of probation; Cathy Edwards, 48 months of probation; Rebecca Morgan, 48 months of probation; Virginia Valentine, 48 months of probation; Michael Martin, seven days [imprisonment]; Aaron Beam, three months [imprisonment]; Richard Botts, 60 months of probation; Will Hicks, 24 months of probation; and Catherine Fowler, 24 months of probation.

Livesay's counsel then pointed out that William Owens's sentence was actually 60 months' imprisonment, not 27 months. The district court said, "I stand corrected." The district court did not discuss the nature of the conduct of these twelve other co-conspirators or explain how their conduct was similar to Livesay's.

This appeal followed.

### III.  DISCUSSION

**A.    District Court's Post-__Gall__ Duties at Sentencing**

After the Supreme Court's decisions in Booker and Gall, the district courts are still required to correctly calculate the advisory Guidelines range. See United

13

States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008); see also Martin, 455 F.3d at 1235; United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). "'[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.'" Pugh, 515 F.3d at 1189-90 (quoting Gall, 552 U.S. at __, 128 S. Ct. at 596). Gall also instructs that the district court "'must make an individualized assessment based on the facts presented.'" Id. at 1190 (quoting Gall, 552 U.S. at __, 128 S. Ct. at 597). If the district court decides that a sentence outside of the Guidelines is warranted, it "'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" Id. (quoting Gall, 552 U.S. at __, 128 S. Ct. at 597) (emphasis omitted).

In addition, Gall admonishes that the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Gall, 552 U.S. at __, 128 S. Ct. at 597; see also 18 U.S.C. § 3553(c) (stating that a district court "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence"); Rita v. United States, 551 U.S. __, __, 127 S. Ct. 2456, 2468 (2007) (discussing § 3553(c)). The Supreme Court in Rita recognized that the requirement that a district

14

court explain the reasons for its chosen sentence "reflects sound judicial practice" because "[c]onfidence in a judge's use of reason underlies the public's trust in the judicial institution" and a statement of the judge's reasoning "helps provide the public with the assurance that creates that trust." Rita, 551 U.S. at __, 127 S. Ct. at 2468.

The length and amount of detail of the judge's reasoning required depends on the circumstances. Id. A statement of reasons for a criminal sentence is particularly important. Id. While a sentencing judge is not required to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors, United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005), "'[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority,'" United States v. Agbai, 497 F.3d 1226, 1230 (11th Cir. 2007) (quoting Rita, 551 U.S. at __, 127 S. Ct. at 2468).

Generally, when sentencing within the advisory Guidelines range, the district court is not required to give a lengthy explanation for its sentence if the case is typical of those contemplated by the Sentencing Commission. See id. (citing Rita, 551 U.S. at __, 127 S. Ct. at 2468). However, if a party requested a sentence outside of the Guidelines range, the district court "will normally go

15

further and explain why he has rejected those arguments." Rita, 551 U.S. at __, 127 S. Ct. at 2468. Further, Rita explained that "[w]here the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so." Id. at __, 127 S. Ct. at 2468. Subsequent to Rita and Gall, this Court explained in Pugh that "a district court need not discuss each Section 3553(a) factor, although '[w]here the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so.'" Pugh, 515 F.3d at 1191 n.8 (quoting Rita, 551 U.S. at __, 127 S. Ct. at 2468) (alterations in original).

## B.    Appellate Review

With regard to appellate review of sentences, the Supreme Court in Gall emphasized that "'while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard.'" Id. at 1189 (quoting Gall, 552 U.S. at __, 128 S. Ct. at 591). Thus, the Supreme Court rejected "'an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range'" and also rejected "'the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.'" Id. at 1190 (quoting

16

Gall, 552 U.S. at __, 128 S. Ct. at 595).

Instead, under Gall, we must engage in a two-step process of sentencing review. See id. First, we must "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range.'" Id. (quoting Gall, 552 U.S. at __, 128 S. Ct. at 597) (emphasis added). Second, we must consider the "'substantive reasonableness of the sentence imposed, under an abuse-of-discretion standard,'" taking into account the "'totality of the circumstances.'" Id. (quoting Gall, 552 U.S. at __, 128 S. Ct. at 597). In considering the substantive reasonableness of the sentence, we may "'not apply a presumption of unreasonableness'" where a sentence is outside of the Guidelines range, and we "'must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" Id. (quoting Gall, 552 U.S. at __, 128 S. Ct. at 597). "Gall reminds us once again . . . to appreciate the institutional advantage that district courts have in applying and weighing the Section 3553(a) factors in individual cases." Pugh, 515 F.3d at 1190-91; see also Gall, 552 U.S. at __, 128 S. Ct. at 597-

17

98.

However, Gall makes clear that "it also remains true that the district court's choice of sentence is not unfettered." Pugh, 515 F.3d at 1191. The Supreme Court in Gall emphasized that appellate courts may "'take the degree of variance into account and consider the extent of a deviation from the Guidelines.'" Id. at 1190 (quoting Gall, 552 U.S. at __, 128 S. Ct. at 595). Moreover, the district court is obliged to consider all of the § 3553(a) factors, and those "'factors in turn . . . guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.'" Id. at 1191 (quoting Booker, 543 U.S. at 261, 125 S. Ct. at 766). Additionally, appellate courts "'will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" Id. at 1190 (quoting Gall, 552 U.S. at __, 128 S. Ct. at 597). In summary, Gall's "directives leave no doubt that an appellate court may still overturn a substantively unreasonable sentence, albeit only after examining it through the prism of abuse of discretion, and that appellate review has not been extinguished." Id. at 1191.

Applying these principles, we review Livesay's sentence again.

## C.   The Section 5K1.1 Departure

It remains true that after the government has made a motion for downward departure pursuant to U.S.S.G. § 5K1.1, the government has no control over

18

whether and to what extent the district court will depart from the Guidelines. See

Martin, 455 F.3d at 1235; McVay, 447 F.3d at 1353. The district court's

downward departure need only be reasonable. See Martin, 455 F.3d at 1235;

McVay, 447 F.3d at 1353. And after Gall, of course, we must review the district

court's § 5K1.1 departure under a deferential abuse-of-discretion standard.

See Gall, 552 U.S. at __, 128 S. Ct. at 597 ("[R]egardless of whether the sentence

imposed is inside or outside the Guidelines range, the appellate court must review

the sentence under an abuse-of-discretion standard."); see also Martin, 455 F.3d at

1236 (stating that if a district court departs under § 5K1.1, we review that departure

for an abuse of discretion).

Applying Gall and affording substantial deference to the district court here,

we are once again constrained to conclude that the district court legally erred in its

§ 5K1.1 downward departure. More specifically, the district court committed

prong one, or "procedural," Gall error in its § 5K1.1 departure, because the district

court based the extent of its § 5K1.1 departure on an impermissible consideration.

See Gall, 552 U.S. at __, 128 S. Ct. at 597.

As we outlined in Livesay II, in determining the extent of a § 5K1.1

departure, the district court must consider the five non-exclusive § 5K1.1 factors,

which are: (1) the usefulness of the defendant's assistance; (2) the truthfulness and

19

completeness of the defendant's information and testimony; (3) the nature and extent of the defendant's assistance; (4) any injury suffered or risk of injury or danger to the defendant and his family as a result of his assistance; and (5) the timeliness of the assistance. See U.S.S.G. § 5K1.1(a)(1)-(5); see also Livesay II, 484 F.3d at 1330-31. The district court may consider factors beyond those five, "but only if the factors relate to the assistance provided by the defendant." Martin, 455 F.3d at 1235, 1239 (concluding that the district court committed legal error by considering, in its § 5K1.1 analysis, the threat of future civil liability, which was not assistance-related) (emphasis added); see also McVay, 447 F.3d at 1354-55 (declining to consider extent of § 5K1.1 departure because district court had committed legal error by considering only non-assistance related facts–McVay's "exemplary record" and his "relationship with his daughter"–in the § 5K1.1 analysis); United States v. Davis, 407 F.3d 1269, 1271 (11th Cir. 2005); United States v. Luiz, 102 F.3d 466, 469 (11th Cir. 1996).

Here, the resentencing transcript makes clear that the district court, in determining the extent of its § 5K1.1 departure, considered "the fact that [Livesay] repudiated the conspiracy at an early time and no longer participated in it." The district court even explained in its § 5K1.1 ruling that "[a]lthough [Livesay's] actions were not sufficient to meet the legal standards for withdrawing from a

20

conspiracy, the Court [was] impressed with the fact that from just an ordinary, common sense understanding, [Livesay] did substantially withdraw from the conspiracy." However, Livesay's repudiation of or "common sense" withdrawal from the conspiracy simply does not relate to the assistance that Livesay provided to the government. Accordingly, the district court should not have considered Livesay's repudiation of or withdrawal from the conspiracy in determining the extent of its § 5K1.1 departure. As such, the district court committed prong one or "procedural" Gall error when it departed 18 levels under § 5K1.1.

Nonetheless, it is unnecessary to remand for resentencing if the § 5K1.1 procedural error did not affect the ultimate sentence imposed. See United States v. Keene, 470 F.3d 1347, 1349 (11th Cir. 2006). In fact, the district court here clearly indicated that it would have imposed the same sentence even if its § 5K1.1 downward departure was erroneous. In other words, even without any § 5K1.1 departure, the district court still would have varied under Booker from the advisory Guidelines range of 78 to 97 months' imprisonment to impose a sentence of 60 months' probation (with 6 months' home detention) based on the § 3553(a) factors. Thus, we also review the district court's alternative Booker variance from the advisory Guidelines range of 78 to 97 months' imprisonment.

D.    The Alternative Variance Sentence

21

As to the alternative sentence, we conclude that another Gall procedural error occurred because the district court failed to adequately explain its variance from the advisory Guidelines range to its chosen sentence in a way that allows for any meaningful appellate review. Gall, 552 U.S. at __, 128 S. Ct. at 597 (stating that a district court commits procedural error by, inter alia, "failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range").[9]

Here, the district court, for the second time, failed to give any explanation of its reasons for imposing a sentence of 60 months' probation (with 6 months' home detention). After imposing its sentence, the district court did proceed to list certain § 3553(a) factors. So far, so good. However, the district court then gave no reasoning or indication of what facts justified such a significant variance from the advisory Guidelines range under its alternative sentence. See Pugh, 515 F.3d at 1190, 1191 n.8 (stating that a district court need not discuss each § 3553(a) factor, but "'must make an individualized assessment based on the facts presented'" and, where it imposes a sentence outside the Guidelines range, will explain why it has

[9]Ordinarily, after determining that the district court would have imposed the same sentence notwithstanding its procedural error, we would examine whether Livesay's ultimate sentence was still reasonable in light of the Guidelines range calculated without the procedural Guidelines error (i.e., the original Guidelines range of 78 to 97 months' imprisonment). See Keene, 470 F.3d at 1349-50. However, as noted herein, we are unable to conduct this analysis because the district court failed to adequately explain its chosen sentence so to allow for meaningful appellate review.

22

done so (quoting <u>Gall</u>, 552 U.S. at __, 128 S. Ct. at 597)); <u>Agbai</u>, 497 F.3d at 1230 ("'[T]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority'" (quoting <u>Rita</u>, 551 U.S. at __, 127 S. Ct. at 2468)).

Although the district court stated that it would exercise its discretion to impose the same sentence even if its § 5K1.1 departure was erroneous, it simply failed to explain its reasons for why it would do so in a way that allows for meaningful appellate review and promotes the perception of fair sentencing. <u>See</u> <u>Gall</u>, 552 U.S. at __, 128 S. Ct. at 597. Thus, there is also procedural error under <u>Gall</u> in the district court's alternative sentence of a <u>Booker</u> variance from the advisory Guidelines range of 78 to 97 months' imprisonment to the imposed sentence of 60 months' probation (with 6 months' home detention).

For example, the district court offered no explanation or reasoning of how a sentence of 60 months' probation (with 6 months' home detention) for an individual who pled guilty to knowingly playing an active and crucial supervisory role in a massive $1.4 billion fraud for at least five years reflected the seriousness of the offense or the nature and circumstances of the crime. The district court did not state or explain in any way why it rejected the government's argument that,

23

notwithstanding Livesay's timely assistance, Livesay should receive "some sentence of significance" in this $1.4 billion fraud scheme because he was a "key player, a significant cog, in the operation of this fraud at HealthSouth for a number of years." See Rita, 551 U.S. at __, 127 S. Ct. at 2468 ("Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, . . . the judge will normally go further and explain why he has rejected those arguments.").

Furthermore, as this Court noted in Martin, the legislative history of § 3553 reveals that Congress "viewed deterrence as 'particularly important in the area of white collar crime.'" Martin, 455 F.3d at 1240 (citation omitted). However, the district court provided nothing more than a conclusory statement that a variance from the advisory Guidelines range of 78 to 97 months' imprisonment to the ultimate sentence of 60 months' probation (with 6 months' home detention) satisfied Congress's important concerns of deterrence.

The district court did summarily list twelve other individuals convicted in the HealthSouth fraud and their respective sentences, which ranged from 24 months' probation to 60 months' imprisonment. However, the district court gave no description of the criminal conduct committed by these twelve defendants, much less any explanation of how Livesay's criminal conduct was similar to that of the co-conspirators who received probation. Indeed, among the sentences noted

24

by the district court was the sentence of 5 months' imprisonment imposed on Emery Harris, who was, according to Livesay's PSI, the Assistant Controller of Finance at the same time that Livesay was the Assistant Controller of Accounting. Livesay's PSI states that Livesay instructed Harris to manipulate HealthSouth's books and records. The district court also noted that Weston Smith, the HealthSouth Controller from March 2000 through August 2001, received 27 months' imprisonment. However, at sentencing, the district court also did not offer any comparison of Harris's or Smith's conduct to Livesay's to explain why it imposed a lesser sentence on Livesay. In sum, the district court's list of sentences received by other defendants involved in the HealthSouth fraud provides no indication or explanation as to how Livesay's sentence serves the needs described in § 3553(a)(6).

In contrast, the district court in Gall discussed with the government at sentencing the circumstances of two of Gall's codefendants who had already been sentenced and, specifically, whether they also had voluntarily withdrawn from the conspiracy. See Gall, 552 U.S. at __, 128 S. Ct. at 599. The district court and the government also discussed another codefendant who engaged in comparable conduct, but had several circumstances that distinguished him from the defendant Gall. See id. at ___, 128 S. Ct. at 600. The Supreme Court was able to determine

25

from this colloquy that the district court had considered the needs reflected in § 3553(a)(6) and ascertain why the district court had imposed a lesser sentence on Gall than these other codefendants received.  See id.  While we do not mean to imply that such a colloquy is necessary in every case, we reference the sentencing in Gall as an example of what type of record evidence aids appellate courts in assessing whether the sentencing court considered the § 3553(a) factors and why it imposed the chosen sentence.

Therefore, even though the district court stated that it would exercise its discretion to impose the same sentence even if its § 5K1.1 departure was erroneous, it committed Gall procedural error by failing to adequately explain why it would do so in order to allow for meaningful appellate review.  Gall, 552 U.S. at __, 128 S. Ct. at 597.

## IV.  CONCLUSION

For all of the foregoing reasons, we vacate Livesay's sentence and remand this case for resentencing in a manner consistent with this opinion.[10]

**SENTENCE VACATED AND REMANDED WITH INSTRUCTIONS.**

---

[10]As to the government's request that this case be reassigned to a different district judge on remand, we observe that the district judge has already recused himself from further participation in this matter.  Thus, we need not address this request.