[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2010
JOHN LEY
CLERK

No. 09-14283
Non-Argument Calendar

_____

D. C. Docket No. 05-00352-CR-JTC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMIE KITCHEN,
a.k.a. Fats,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 25, 2010)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Jimmie Kitchen appeals his eighteen-month sentence imposed upon

revocation of supervised release.  After review, we affirm.

## I.  BACKGROUND

In November 1998, Kitchen was convicted of one count of conspiracy to distribute and to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846, and two counts of distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  The district court sentenced Kitchen to 262 months' imprisonment and 5 years of supervised release.  After the government moved for a Federal Rule of Criminal Procedure 35(b) substantial assistance reduction, the district court reduced Kitchen's sentence to 90 months' imprisonment and 5 years of supervised release.

## A.  Modification to Halfway House

During 2008, Kitchen violated the terms of his supervised release multiple times and could have had his supervised release revoked.  However, in May 2008, Kitchen's probation officer petitioned the district court to modify Kitchen's supervised release conditions to require that Kitchen reside at Dismas Charities, a halfway house, to participate in a drug/alcohol treatment program for up to 120 days.  The probation officer stated that: (1) Kitchen's urine samples tested positive for cocaine in April 2005 and March 2008; (2) Kitchen failed to provide urine specimens seven different times between June 2005 and December 2005; (3)

Kitchen failed to maintain full-time verifiable employment for approximately eleven months; (4) in 2007, Kitchen moved without notifying the probation officer; and (5) Kitchen failed to submit monthly supervision reports for April through October 2007 and January and February 2008. The district court granted the modification.

**B. Revocation of Supervised Release**

In July 2008, the probation officer petitioned for a warrant and order to show cause why Kitchen's supervised release should not be revoked. The show-cause petition charged that Kitchen failed to: (1) report to Dismas Charities on July 15, 2008, as instructed; (2) report to the U.S. Probation Office as instructed; (3) provide urine specimens eight different times between May 2008 and July 2008; and (4) submit monthly supervision reports as instructed for April, May, and June 2008. The district court issued a warrant for Kitchen's arrest. In June 2009, Kitchen was arrested in Dade County, Florida and the U.S. Marshal's Service executed the warrant.

At his supervised release revocation hearing, Kitchen admitted the allegations in the show-cause petition. The government stated that Kitchen committed a Grade C violation and had a criminal history category of II, and thus the recommended guidelines range was four to ten months.

3

The government recommended that the district court sentence Kitchen to ten months' imprisonment. The government noted that in 2008, Kitchen had a significant number of problems in his supervision and "then finally ended up basically absconding last summer." The government recommended no supervised release because it believed additional supervision would not benefit Kitchen. The district court stated:

> [T]his appears to me, at first glance, to be one that may even warrant a sentence above the guideline range, because of not just Mr. Kitchen's criminal history, but the number of violations, the fact he got such a tremendous benefit in his last – on the sentence of conviction. I think the judge knocked off, oh, he had an original sentence of 262 months, and the judge reduced that to 90 I believe?
> . . . .
> . . . And then to abscond from supervision, and – there seems to be a continuing indication of no interest in following the rule of law, and no respect for the law.

Kitchen responded that, although he received a significant sentence reduction, it was irrelevant to the imposition of sentence upon revocation of supervised release. Kitchen explained that he provided cooperation valuable enough for the government to move for a Rule 35(b) sentence reduction and, hence, his reduction was for services previously rendered, not a "down payment on future behavior."

Kitchen explained that he absconded to Miami after he missed his report date to Dismas Charities because he knew that, by failing to report there, the next

4

time he reported to the probation office he would likely be arrested and sent back to prison. Kitchen noted that while he was in Miami he was not committing crimes. He worked at a car wash and sent money back to his family in Georgia. He was arrested during a traffic stop when officers discovered he had an outstanding bench warrant for an unresolved traffic violation in Miami. The officers discovered the July 2008 federal arrest warrant and transferred him back to Atlanta.

Kitchens requested an advisory guidelines sentence because the "guidelines deal with the nature of the violations here," which Kitchens stated were technical violations. Although he admitted that absconding was "about the most severe technical violation you could have," nevertheless a sentence at the "top end of the guidelines would be sufficient" to satisfy the court's concerns about his absconding. Kitchen requested that no supervised release follow his incarceration.

Kitchen personally addressed the district court and apologized. He explained that, at the time, he thought it would be best if he stayed out of jail and supported his family. He stated that while he was in Miami he washed cars every day and sent money back home. He pointed out that when he was arrested on the traffic violation, he gave the officers his real name and "told them I was wanted for a warrant out of Atlanta as well."

5

The district court revoked Kitchen's supervised release and sentenced him to eighteen months in prison, with no supervised release to follow since Kitchens did not "appear to be amenable to supervision." The district court explained the basis for its sentence:

> In considering the guideline range, and also considering the factors under [18 U.S.C. §] 3553 such as the need to promote respect for the law and provide just punishment, and to adequately deter further criminal conduct, I do note that, not only did you not follow the rules of supervised release, and particularly the number of drug tests that you simply did not meet, I note that much of your previous criminal record involves things like obstruction of police, resisting an officer, failure to appear, obstruction, resisting arrest, failure to appeal.

Kitchen objected to the sentence because it was "not reasonable," but raised no procedural objection to it. Kitchen appealed to this Court.

## II. DISCUSSION

"Under 18 U.S.C. § 3583(e), a district court may, upon finding by a preponderance of the evidence that a defendant has violated a condition of supervised release, revoke the term of supervised release and impose a term of imprisonment after considering certain factors set forth in 18 U.S.C. § 3553(a)." United States v. Sweeting, 437 F.3d 1105, 1107 (11th Cir. 2006).[1] The district

---

[1]The relevant § 3553(a) factors that the court must consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence; (3) the need to protect the public; (4) the need to provide the defendant with educational or vocational training or medical care; (5) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwanted sentencing disparities; and (7) the need to provide restitution to victims. See 18 U.S.C.

6

court must also consider the policy statements in Chapter 7 of the Sentencing Guidelines, one of which provides recommended, non-binding ranges of imprisonment. United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006).

We review sentences imposed upon revocation of supervised release for reasonableness. Sweeting, 437 F.3d at 1106-07. The party challenging the sentence bears the burden of showing that it is unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

A reasonableness review is synonymous with the abuse-of-discretion standard and uses a two-step process. Gall v. United States, 552 U.S. 38, 46, 128 S. Ct. 586, 594 (2007); United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances. Pugh, 515 F.3d at 1190.[2]

When a sentencing judge decides to impose a sentence outside the advisory

---

§ 3583(e)(cross-referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7)).

[2]The parties agree that because Kitchen did not raise his procedural unreasonableness argument below, plain error review applies. Cf. United States v. Bennett, 472 F.3d 825, 831 (11th Cir. 2006) (reviewing for plain error defendant's objections to sentencing calculations raised for first time on appeal). Under plain error review, "a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, we may exercise our discretion to recognize a forfeited error, but only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Sanchez, 586 F.3d 918, 930 n.30 (11th Cir. 2009) (brackets omitted).

guidelines range, "he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 552 U.S. at 50, 128 S. Ct. at 597. "Sentences outside the guidelines are not presumed to be unreasonable, be we may take the extent of any variance into our calculus." United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir.), cert. denied, 129 S. Ct. 2847 (2009).

Here, the sentence was procedurally reasonable. The district court correctly calculated the advisory guidelines range, considered the § 3553(a) factors and, contrary to Kitchen's claims, gave an adequate explanation for the chosen sentence. The district court expressly reviewed Kitchen's criminal history of obstruction, resisting officers, and failing to appear. The district court also noted Kitchen's multiple supervised release violations and year-long abscondence from supervision. In doing so, the district court adequately explained the basis for its chosen sentence.[3]

---

[3]This case is distinguishable from United States v. Livesay, 525 F.3d 1081 (11th Cir. 2008), which Kitchen cites, because here the district court supported its recitation of the § 3553(a) factors with specific facts regarding Kitchen and his case that explained the factors' application. See Livesay, 525 F.3d at 1093. We also reject Kitchen's argument that the district court erred by failing to explain, when it pronounced sentence, how its concern regarding Kitchen's substantial assistance reduction in his original sentence impacted the new sentence. As reasonably construed, the record indicates the district court did not mention Kitchen's substantial assistance reduction when it finally pronounced sentence (after hearing Kitchen's argument as to why the reduction was irrelevant) because the district court did not consider it in imposing sentence.

Kitchen also has not carried his burden to show his eighteen-month sentence was substantively unreasonable. Kitchen argues the district court abused its discretion when it imposed an upward variance because (1) Kitchen committed only common technical violations, (2) he did not commit any new crimes while on supervised release, (3) for two years he was "mostly" successful in observing the supervised release conditions, and (4) an eighteen-month sentence would create an unwarranted disparity between Kitchen's sentence and those of similar offenders.

The facts show that Kitchen violated the terms of his supervised release provisions twenty times, in 2005, 2007, and 2008. Nevertheless, the probation office and the district court modified Kitchen's supervised release terms to require drug/alcohol treatment at a halfway house to avoid revocation. Kitchen responded by immediately refusing to comply with the modification and then absconding from supervision for a year. He did not return willingly. As the district court noted, Kitchen also had a general criminal history of thwarting the law-enforcement process. Under the totality of the circumstances, we cannot say the district court abused its discretion when it imposed an eighteen-month sentence in Kitchen's case.

**AFFIRMED.**

9