[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15805

_____

D.C. Docket No. 1:15-cr-20411-DMM-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANGELINA GONZALEZ,

Defendant - Appellant.


_____

No. 15-15806

_____

D.C. Docket No. 1:15-cr-20411-DMM-4

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ODALYS DE CARMEN BORREGO,

Defendant – Appellant.

_____

No. 15-15807

_____

D.C. Docket No. 1:15-cr-20411-DMM-9

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

OSLAY BORREGO ALARCON,

Defendant – Appellant.

_____

No. 15-15808

_____

D.C. Docket No. 1:15-cr-20411-DMM-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARIA E. ECHARRI,

Defendant – Appellant.

2

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 21, 2017)

Before HULL and DUBINA, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

Appellants, Angelina Gonzalez ("Gonzalez"), Maria E. Echarri ("Echarri"),

Odalys De Carmen Borrego ("O. Borrego"), Oslay Borrego Alarcon ("Borrego

Alarcon"), and eight other individuals were charged by a federal grand jury in the

United States District Court for the Southern District of Florida in a 30-count

superseding indictment with conspiracy to commit health care and wire fraud, in

violation of 18 U.S.C. § 1349 (Count 1) and related substantive charges.

Subsequently, the four defendants/appellants entered guilty pleas and submitted

written factual proffers regarding their involvement in the offenses.

## I.    BACKGROUND

This is a huge Medicare fraud case.  After uncovering that a group of

pharmacies had all purported to have repeatedly filled the same drug prescriptions

for the same exact pool of Medicare beneficiaries, the Department of Health and

_____

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

3

Human Services ("DHHS") began an investigation of the pharmacies. As a result of the investigation, the DHHS learned that all of the defendants involved in this appeal, as well as Daniel Suarez ("Suarez"), Borrego Alarcon's 23-year-old son, owned and managed a number of pharmacies that they used to engage in a conspiracy whose object was to obtain payments fraudulently from Medicare and Medicare Program Providers for prescription drugs that the pharmacies had not purchased or dispensed. From their fraud, Suarez and the defendants received reimbursements in the amount of $21,000,000 from Medicare and Medicare drug plans.

As part of the conspiracy, the defendants paid patient recruiters to locate and pay Medicare beneficiaries for the use of their beneficiary numbers. The conspirators then used the numbers on reimbursement claims they submitted to Medicare through all of the pharmacies. The claims falsely and fraudulently represented that various healthcare benefits, primarily prescription drugs, were medically necessary, prescribed by a doctor, and had been provided to Medicare beneficiaries by the pharmacies. Law enforcement officers determined that the proceeds of the fraud were distributed to various bank accounts for the personal benefit and use of each of the defendants. After his arrest, Suarez informed law

4

enforcement officers that he and the defendants equally managed and profited from the pharmacies involved in Count 1 of the offense.

After the defendants entered guilty pleas, the United States Probation Office prepared a presentence investigation report ("PSI") for each of the defendants. All of the PSIs contained the same calculation of the defendants' offense levels under the United States Sentencing Guidelines ("USSG"). Each PSI calculation set the defendants' base offense level at seven, pursuant to USSG §§ 2B1.1 and 2X1.1(c)(1); each PSI added twenty levels, pursuant to USSG § 2B1.1(b)(1)(K), because the defendants were held accountable for a loss greater than $9,500,000 but less than $25,000,000; each PSI added three levels, pursuant to USSG §2B1.1(b)(7), because the loss involved a government health care program and was greater than $7,000,000; each PSI added two levels, pursuant to USSG § 2B1.1(b)(10)(C), because the offense involved sophisticated means; and each PSI added three levels, pursuant to USSG § 3B1.1(b), based on the defendants' roles as managers or supervisors of a criminal activity that involved five or more participants or was otherwise extensive. The PSI also recommended a three-level downward adjustment for each of the defendants, pursuant to USSG §§ 3E1.1(a) and (b), for their timely acceptance of responsibility for the offenses.

5

After adjustments, each defendant's total offense level was 32. None of the defendants had any criminal history points and, as a result, the PSI assigned each defendant a criminal history category of I. Based upon a criminal history category of I and a total offense level of 32, each defendant's guideline imprisonment range was 121 to 151 months. The PSI further reported that the statutory maximum sentence for the offense was 20 years' imprisonment, pursuant to 18 U.S.C. § 1343. Each of the defendants submitted a sentencing memorandum and a motion for a downward variance.

The government filed a written response arguing that the defendants should be held responsible for the entire loss from the fraud because bank records, interviews of co-conspirators, and the defendants themselves confirmed that they had worked together as a family to own and operate a well-organized fraudulent enterprise using the eight pharmacies to effectuate the fraud. The government asserted that the defendants' offense levels were properly calculated, but did concede that, based upon the district court's ruling during Suarez's sentencing hearing, the two-level sophisticated means enhancement should not be applied.

After sustaining the defendants' objections to the two-level sophisticated means enhancement, the district court found that each of the defendant's total offense level was 30. Thus, an offense level of 30 and a criminal history category

6

of I resulted in a recommended guideline range of imprisonment of 97 to 121 months' imprisonment. Following the parties' arguments, the district court imposed a sentence of 108 months' imprisonment for each defendant. Defendants then perfected this appeal.

## II. ISSUES

(1) Whether the district court clearly erred when it found each defendant was a manager or supervisor of the criminal activity.

(2) Whether the district court clearly erred in determining the amount of the loss and amount of restitution attributable to each of the defendants.

(3) Whether the district court abused its discretion by imposing the same 108-month sentence on each of the defendants.

## III.    STANDARDS OF REVIEW

We review for clear error the district court's determination of the facts regarding a defendant's role in the offense. *United States v. Martinez*, 584 F.3d 1022, 1025 (11th Cir. 2009).

We also review the district court's determination of the amount of the loss attributable to a defendant for clear error. *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011).

7

In addition, we review for clear error the factual findings underlying a restitution order. *United States v. Brown*, 665 F.3d 1239, 1252 (11th Cir. 2011).

We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013).

## IV.    DISCUSSION

### A. *Managerial Roles*

In our view, the district court properly enhanced the defendants' offense levels, pursuant to USSG § 3B1.1(b), for their managerial roles in the Medicare fraud conspiracy. First of all, the standard of review cuts against the defendants' arguments. It is a monumental hurdle to establish clear error. Indeed, in their factual proffers, each defendant admitted that he/she owned and operated pharmacies used to commit the fraud and that he/she submitted claims and received payments for prescription drugs which he/she knew that the pharmacies neither possessed nor dispensed.

The government presented evidence that these pharmacies had little or no legitimate business; that the fraud involved more than 30 participants including patient recruiters and Medicare beneficiaries, whom the defendants paid in order to use their beneficiary numbers to file false Medicare claims; that the defendants were signatories on the various bank accounts used to receive and conceal the

8

fraud proceeds; and that their co-conspirators stated that they had acted as a "family" to manage the fraud activities. The record demonstrates that the defendants' claims regarding each one's lack of leadership responsibilities are contrary to their own prior admissions and the evidence presented at the sentencing hearing. Accordingly, we affirm the three-level enhancement for the defendants' roles as managers or supervisors in the conspiracy.

### B. Amount of Loss and Restitution

It is also our view that the district court was correct in attributing the amount of loss and calculating the amount of restitution owed by each defendant. A defendant's specific offense characteristics, such as the amount of the loss attributable to him under USSG § 2B1.1, are determined based upon all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity. *See* USSG § 1B1.3(a)(1)(B).

In the present case, in determining the defendants' offense level at sentencing, the district court calculated the amount of the loss caused by the offenses with respect to each of the defendants. *See* USSG § 2B1.1. The district court need only make a reasonable estimate of the loss amount based upon a preponderance of the evidence. *See* 18 U.S.C. § 3664(e) (providing that the government prove the loss amount by a preponderance of the evidence); *see also*

*United States v. Martin*, 803 F.3d 581, 595 (11th Cir. 2015) (citing to *United States v. Futrell*, 209 F.3d 1286, 1290 (11th Cir. 2000)).  Here, the district court made individualized findings that supported its determination that each of the defendants was responsible for between $9.5 million and $25 million in losses by first determining the scope of each defendant's criminal activity and then calculating the foreseeable loss.  The court's conservative and methodical analysis was appropriate and, as a result, the 20-level enhancement of the defendants' offense levels under USSG § 2B1.1(b)(1)(K) was correct.  We therefore affirm the district court's calculation of the loss amount.

The district court also made findings to support its imposition of restitution under 18 U.S.C. § 3664, which states that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court[.]"  18 U.S.C. § 3664(f)(1)(A).  In allotting restitution, § 3664(h) states that "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."  18 U.S.C. § 3664(h).  Because we discern no clear error in the district court's restitution determination, we affirm the district court's order.

10

## C. Reasonableness of Sentences

Finally, the defendants argue that the district court's decision to impose identical sentences on each of them was unreasonable and that the district court should have given more consideration to their individual circumstances and individual roles in the conspiracy. We disagree. We review the substantive reasonableness of the sentence for abuse of discretion, based upon the totality of the circumstances. *United States v. Livesay*, 525 F.3d 1081, 1091 (11th Cir. 2008).

In announcing the defendants' sentences, the district court stated that it had considered the § 3553(a) factors and discussed several of those factors on the record. The court acknowledged that the consequences of the sentences on the defendants' families would be severe because the fraud was perpetrated as a family affair, involving many members of the same family. The district court stated, however, that the fraud involved a tremendous loss in that the defendants defrauded the Medicare program of more than $20,000,000 within a period of a few years.

Finally, the district court acknowledged that although the 108-months' sentence was harsh, the differences in the level of participation in the offense by the individual members was minimal, and each of the defendants received a significant amount of the known fraud proceeds. Much of that money is still

11

unaccounted for, and the amount was substantial with respect to each of the defendants.

In conclusion, we hold that the sentences were reasonable.  For the foregoing reasons, we affirm the defendants' sentences.

AFFIRMED.