[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12381
Non-Argument Calendar

_____

D.C. Docket No. 3:18-cr-00105-BJD-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAWRENCE LEWIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 29, 2020)

Before JORDAN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Lawrence Lewis appeals his 72-month sentence for conspiracy to distribute fentanyl and fentanyl analogues.  He argues that his sentence is substantively unreasonable because the district court lacked sufficient justification to vary upward from the applicable Sentencing Guidelines range.  We disagree, and therefore affirm.

I.

Beginning in at least June 2017 and continuing until his arrest in September of that year, Lewis supplied drugs to his son and stepdaughter (codefendant Dawn Lindsay), who lived with him.  Lewis gave his children two to three $20 bags of "heroin" per day because they were drug addicts and he wanted "to keep them from getting sick."  He was aware that they sometimes resold the drugs that he gave them.

In June 2017, a woman who was staying at Lewis's house used some of his stepdaughter's drugs, overdosed, and died.  Lewis called for an ambulance.

A month later, a man who had paid Lewis $40 to stay in his house for the weekend used drugs that he got from Lewis, overdosed, and died.  Lewis called for an ambulance.

Less than two weeks later, Lewis was awakened by a noise that he described as a "death rally" from a man who had used some of Lindsay's drugs and

2

overdosed.  Lewis called for an ambulance and the man was taken to the hospital, where he later died.

After the third fatal overdose at Lewis's house in little more than a month, police began investigating drug activity at the house.  An undercover narcotics detective purchased $60 "bags" (foil packets) of fentanyl or controlled-substance fentanyl analogues from Lindsay on nine occasions in August and September 2017.  After the ninth sale, law enforcement officers executed a search warrant at Lewis's house, where they found user amounts of heroin and marijuana; 41.2 grams of unspecified "liquid pharmaceutical with packaging"; crack pipes, a scale, and a plastic bag, each with drug residue; other drug paraphernalia, including push pipes, syringes, and foil packets like those given to the undercover detective; and a pistol.  The firearm, drugs, and the scale were found in Lewis's bedroom, and the money from the most recent drug sale to the undercover detective was found in Lewis's pocket.  Lindsey told law enforcement officers that Lewis "r[an] the house," and that she got her "cut" from him in the form of free "heroin."

Lewis and Lindsey were charged in a seven-count indictment, and Lewis pleaded guilty to one count of conspiracy to distribute a substance containing fentanyl and controlled-substance fentanyl analogues, in violation of 21 U.S.C. §§ 841 and 846.  The probation officer prepared a presentencing investigation report (PSR) stating that Lewis and Lindsey were both responsible for the fentanyl

3

and fentanyl analogues sold to the undercover detective and the heroin found in Lewis's house. Based on the weight of those drugs, and with an upward adjustment for the presence of a firearm and a downward adjustment for Lewis's acceptance of responsibility, the PSR initially calculated Lewis's Sentencing Guidelines imprisonment range to be 18 to 24 months.

The government objected to this calculation, contending that Lewis should also be held responsible for the drugs that he provided to his children during the charged timeframe of the conspiracy (June 2017 through September 18, 2017). The government also filed a motion for an upward variance from the Guidelines range (which it contended should be 57 to 71 months, based on the total weight of drugs attributable to Lewis), arguing that the Guidelines did not adequately account for Lewis's involvement in the three overdose deaths that had occurred in his home, and that a 72-month sentence was appropriate.

The probation officer revised the PSR to account for the drugs that Lewis distributed to his children between June 27, 2017 (the date of the first overdose death) and September 18, 2017 (the date of Lewis's arrest), using a conservative estimate of 64.1 grams of fentanyl and 3.1 grams of fentanyl analogue to arrive at a revised Guidelines range of 46 to 57 months. Lewis did not object to the PSR.

At sentencing, Lewis requested a Guidelines sentence, pointing out that his criminal history was negligible; he suffered from multiple serious health

4

conditions, including back and shoulder conditions that led to his own addiction to fentanyl for pain control and impaired judgment as the result of a stroke several years earlier; and he had supplied his children with drugs because he thought (using his medically-impaired judgment) that it would be better to give them controlled amounts than to let them buy drugs for themselves on the street. The government renewed its request for an upward variance to 72 months.

The district court adopted the Guidelines calculations in the revised PSR. After reviewing the PSR and hearing argument from the parties and a statement from Lewis, the district court varied upward and imposed a sentence of 72 months in prison followed by three years' supervised release. This appeal followed.

## II.

A district court must impose a sentence that is "sufficient, but not greater than necessary," to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public. 18 U.S.C. § 3553(a). In selecting an appropriate sentence, the district court must consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the advisory Guidelines range and pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and any need for restitution to victims. *Id.*

We review the procedural and substantive reasonableness of a sentence under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). The weight given to each § 3553(a) sentencing factor is a matter committed to the discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citation omitted). A "district court must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Livesay*, 525 F.3d 1081, 1090 (11th Cir. 2008) (citation and quotation marks omitted). When a sentencing court varies above the advisory Guidelines range, it must support that decision with a justification that is "sufficiently compelling to support the degree of the variance." *Irey*, 612 F.3d at 1186 (quoting *Gall,* 552 U.S. at 50).

We will vacate a sentence for substantive unreasonableness only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (citation omitted). The party challenging the sentence bears the burden of

6

showing that it is unreasonable in light of the record and the 18 U.S.C. § 3553(a) sentencing factors. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). Lewis has not met that burden here.

Lewis argues that the district court's upward variance was unjustified and arbitrary because the government's request for an upward variance had already been accounted for by increasing his Guidelines range based on a larger quantity of controlled substances than had originally been attributed to him. Not so; the government's motion was based in large part on Lewis's involvement in the three fatal overdoses that occurred in his house—conduct that was not accounted for in the calculation of Lewis's Guidelines sentence. As the district court pointed out, Lewis had continued to supply drugs to Lindsey even though he knew that she was reselling or sharing the drugs that he provided, and even as "people were dropping dead" from those drugs. The court acknowledged Lewis's own drug addiction and his multiple health conditions but found that Lewis's illnesses did not explain or excuse his conduct.

We cannot assume that an above-Guidelines sentence is unreasonable; instead, we must give due deference to the district court's decision that the extent of its variance is justified by the sentencing factors set out in 18 U.S.C. § 3553(a). *Irey*, 612 F.3d at 1187. Lewis has not shown that the district court considered any improper or irrelevant factor in arriving at his sentence, and under these

circumstances, the court's determination that a six-year sentence was necessary to reflect the seriousness of the offense, protect the public, and deter Lewis and others from committing similar offenses was not unreasonable.  We also note that the court's 72-month sentence was well below the 20-year statutory maximum for his offense as it was charged in the indictment.  *See* 21 U.S.C. § 841(b)(1)(C) (providing a 20-year maximum sentence for drug offenses involving an unspecified amount of a controlled substance).  This fact is another indicator that Lewis's sentence was reasonable.  *See United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016).

We therefore affirm Lewis's conviction and sentence.

**AFFIRMED.**