[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10801
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 16, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-00190-WSD-AJB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAREN CLARK,

Defendant-Appellant.

_____

No. 10-10925
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cr-00190-WSD-AJB-8

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REGINALD SMITH,

a.k.a. Reginald L. Smith,

Defendant-Appellant.

_____

No. 10-11170
Non-Argument Calendar
_____

D.C. Docket No. 1:08-cr-00190-WSD-AJB-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VIOLA HILL,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(March 16, 2011)

Before EDMONDSON, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Karen Clark, Viola Hill, and Reginald Smith appeal their sentences for

conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, and aggravated

identity theft in violation of 18 U.S.C. § 1028A(a) and (b)(2). They argue that the district court erred in imposing a two-level enhancement for sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(9)(C). Hill also argues that the district court erred in finding that she was subject to a four-level increase for being an organizer or leader, pursuant to U.S.S.G. § 3B1.1(a). Finally, Clark argues that her sentence was procedurally and substantively unreasonable. For the following reasons, we affirm Hill's and Smith's sentences, and we vacate Clark's sentence and remand for resentencing.

I.

From September 2005 through May 2008, Hill ran a check-cashing scheme. Smith was an employee of the United States Postal Service ("USPS"), and Hill paid him $250 per box to steal boxes of checks from the Atlanta Bulk Mail Center. Hill paid another individual to obtain account identifiers, such as dates of birth and social security numbers, to match the identities on the stolen checks. Hill and her husband then paid a different person $100 per document to create fraudulent identification documents, including drivers licenses. These fraudulent documents matched the stolen information, but used the Hills' photos and the photos of their co-defendants.

The Hills distributed the stolen checks and fake identifications to at least

3

five check runners, including defendant Clark. Then, Hill and the other check cashers traveled to casinos in Mississippi and Louisiana to cash the fraudulent checks, where they could cash them for larger amounts. The conspirators occasionally cashed the checks in Colorado and negotiated some of the stolen checks in retail stores. Sometimes Hill requested phone cards or household items as payment from the check runners for providing them with the stolen checks. The Hills took half of the money that the check cashers received. This scheme victimized 203 account holders, for a total loss amount of $622,900.24.

## II.

### A. Sophisticated Means

We review a district court's factual finding that a defendant used "sophisticated means" for clear error. *United States v. Robertson*, 493 F.3d 1322, 1329–30 (11th Cir. 2007). The Guidelines state that two levels are added to a defendant's base offense level if the offense involved sophisticated means. U.S.S.G § 2B1.1(b)(9)(c). "Sophisticated means" refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," and may include conduct like hiding assets or transactions "through the use of fictitious entities, corporate shells, or offshore financial accounts." U.S.S.G. § 2B1.1 cmt. n.8(B). And "[t]here is no requirement that each of a

4

defendant's individual actions be sophisticated in order to impose the enhancement. Rather, it is sufficient if the totality of the scheme was sophisticated." *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010).

All three defendants argue that the district court clearly erred in finding that they used sophisticated means. Clark and Smith argue that the district court applied an improper standard because the court found that the check-cashing scheme involved "practical sophistication." They also argue that the scheme did not involve sophisticated means because the group did not research their victims' lives, extend their lines of credit, or change their billing addresses. Smith argues that there was nothing especially complex or intricate about his conduct. He urges us to follow the approach adopted by other circuits, in which a scheme involves "sophisticated means" when the scheme is distinguishable from routine or garden-variety offenses. Clark and Hill argue that the district court's factual findings were without support in the record because the conspirators' roles were not compartmentalized, because there is nothing especially complex or intricate about cashing stolen checks at casinos, and because there was no evidence that the conspirators cashed checks at casinos for the purpose of evading detection.

The district court did not clearly err in finding the defendants' check-cashing scheme involved sophisticated means of execution and concealment. The

scheme took years of planning, coordination, and efforts of the many individuals involved in the criminal operation. The conspirators obtained information about the account holders, created and used fraudulent identification documents, cashed the checks at casinos, and traveled across state lines. The totality of the scheme was complex in execution, satisfying U.S.S.G § 2B1.1(b)(9)(c). *See Ghertler*, 605 F.3d at 1267. Moreover, these facts indicate a sophisticated means of concealing the offense from authorities.

The district court did not apply an improper definition of sophisticated means, nor did it create a new legal standard, by recognizing the "practical sophistication" of this scheme. The sentencing guidelines do not require technological or intellectual sophistication. Nor do they limit the enhancement to schemes involving fictitious entities, corporate shells, and offshore accounts. *See United States v. Campbell*, 491 F.3d 1306, 1315–16 (11th Cir. 2007) (stating that "the fact that [the appellant] did not use offshore bank accounts or transactions through fictitious business entitles [wa]s unavailing"). The guidelines also do not require that the defendants research their victims' lives, extend their lines of credit, or change their billing addresses for the district court to find that an offense involved sophisticated means. In light of the nature and extent of the scheme, we have no definite and firm conviction that the district court clearly erred when it

enhanced the defendants' sentences for sophisticated means. We accordingly affirm the enhancement, and Smith's final sentence.

B.      Organizer or Leader

A defendant's role as an organizer or leader is a factual finding that we review for clear error. *See United States v. Jimenez*, 224 F.3d 1243, 1250–51 (11th Cir. 2000). We will not find clear error unless "'we are left with a definite and firm conviction that a mistake has been committed.'" *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (quoting *Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003)).

To assess whether a defendant was an "organizer or leader of a criminal activity," we consider several factors, including:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

*United States v. Gupta*, 463 F.3d 1182, 1198 (11th Cir. 2006) (citing U.S.S.G. § 3B1.1 cmt. n.4). Not all of these considerations need to be present. *United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005) (per curiam). "'Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some

degree of control, influence, or leadership.'" *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993) (per curiam) (quoting *United States v. Brown*, 944 F.2d 1377, 1385 (7th Cir. 1991)).

Although Hill recruited Jennings into the conspiracy, obtained the checks, and, along with her husband, received a larger share of the crime proceeds than the other conspirators, she argues that a four-level increase was not warranted because there was no evidence that she exercised control over the other defendants or directed their activity. Hill also argues that she should not be considered the leader or organizer of this criminal enterprise because her husband's family had a history of committing similar crimes before they ever met her.

The district court's finding that Hill was a organizer or leader, rather than merely a manager or supervisor, was not clearly erroneous. Rather, it is supported by Hill's own admissions and the undisputed facts in the record. Further, the past criminal history of Hill's co-conspirators is irrelevant to an assessment of her role in this particular offense, as the factors look only at the defendant's conduct in and control over a given enterprise. *See* U.S.S.G. § 3B1.1 cmt. n.4. Accordingly, the district court did not err in finding that Hill was eligible for a four-level increase as an organizer or leader of the scheme, and we affirm her sentence.

C.     Procedural Reasonableness

On appeal, the party challenging the sentence bears the burden of establishing that the sentence is unreasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). We review sentences under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). Clark argues that her sentence on count one was procedurally unreasonable because the district court failed to rule on the government's § 5K1.1 motion for a downward departure, explain the extent of the departure it granted, or state what basis it considered in departing downward. We agree.

Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id*. The district court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id*. at 50, 128 S. Ct. at 597.

Once the government has made a motion for downward departure pursuant to U.S.S.G. § 5K1.1, the government has no control over whether the district court will depart from the guidelines. *United States v. Livesay*, 525 F.3d 1081, 1091 (11th Cir. 2008). But in determining the extent of a § 5K1.1 departure, the district

court must consider the five non-exclusive § 5K1.1 factors: "(1) the usefulness of the defendant's assistance; (2) the truthfulness and completeness of the defendant's information and testimony; (3) the nature and extent of the defendant's assistance; (4) any injury suffered or risk of injury or danger to the defendant and his family as a result of his assistance; and (5) the timeliness of the assistance." *See id*. at 1092; U.S.S.G. § 5K1.1(a)(1)–(5). Even where the district court has erred, it is unnecessary to remand if the § 5K1.1 procedural error did not affect the ultimate sentence imposed. *Livesay*, 525 F.3d at 1092.

In this case, the district court committed procedural error because it failed to explain adequately the extent of the § 5K1.1 departure. Clark requested a three-level departure, which would have implicated a guideline range of 51 to 63 months. The government requested a two-level departure, which would have made Clark's guideline range 57 to 71 months. The district court ruled, "All right. Well, I will grant the [§ 5K1.1] motion, but as I consider a reasonable sentence I will determine what is the proper reduction to make." The court, however, failed to provide any further explanation of the extent of the departure, or any analysis of the five mandatory factors in § 5K1.1(a). The district court, without any reference to the departure or the final guideline range, imposed a sentence of 60-months' imprisonment on count 1, which was within the guideline range requested by both

10

parties. What, if any, reduction it gave for the §5K1.1 motion remains unclear.

We have no idea whether the district court considered impermissible factors in imposing the downward departure, and it is impossible to know whether this procedural error affected the ultimate sentence imposed. *See Livesay*, 525 F.3d at 1092 (finding that the § 5K1.1 procedural error did not require remand because the district court "clearly indicated that it would have imposed the same sentence even if its § 5K1.1 downward departure was erroneous"). Thus, based on the facts of this case, we find the district court committed procedural error.[1]

We affirm with respect to Smith and Hill, and we vacate and remand for Clark's resentencing, noting that the district court should articulate the extent of its departure under § 5.K1.1.

**AFFIRMED in part; VACATED and REMANDED in part.**

---

[1] Because the Clark's sentence was not procedurally sound, we do not address whether the sentence imposed was substantively reasonable. *See Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007) (explaining how if the sentence is procedurally reasonable, this Court then evaluates the "substantive reasonableness" of the sentence imposed).