[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15588
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 17, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:10-cr-00299-SDM-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SERGIO LOPEZ-LUNA,
a.k.a. Pablo Baltazar-Morale,
a.k.a. Armando Baltazar Morales,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 17, 2011)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Sergio Lopez-Luna appeals his 36-month sentence imposed for illegal re-entry of a deported alien after a felony conviction and unlawful entry into the United States. On appeal, Lopez-Luna argues that his sentence is procedurally and substantively unreasonable. After review, we affirm.

## I. BACKGROUND

### A. Prior Deportations and Illegal Reentries

Lopez-Luna is a native and citizen of Mexico. In May 2006, Lopez-Luna was arrested in Colorado for speeding, reckless driving and driving without a valid driver's license or car insurance. After Lopez-Luna was convicted of speeding and fined, he was placed in Immigration and Customs Enforcement custody. Lopez-Luna admitted he entered the United States on foot in Arizona in 2002. On May 18, 2006, Lopez-Luna was deported to Mexico.

At some point, Lopez-Luna illegally reentered the United States. In May 2007, Lopez-Luna was arrested in Wisconsin on charges of bank fraud involving a counterfeit check-cashing scheme. Lopez-Luna was adjudicated guilty in federal district court and sentenced to one year and one day of imprisonment, followed by three years' supervised release. On February 26, 2008, Lopez-Luna was deported to Mexico again.

By May 23, 2008, Lopez-Luna was back in the United States. On that date, Lopez-Luna was arrested in California on charges of burglary, forgery, possession of forged notes and attempted burglary in the second degree. Lopez-Luna pled guilty in state court. On July 28, 2008, after serving 81 days in jail, Lopez-Luna was deported to Mexico for a third time.

## B. Offense Conduct

On June 18, 2010, United States Border Patrol Agents stopped a van with California plates on a Florida interstate. Inside, the agents found six Mexican citizens who were illegally present in the United States, one of whom was Lopez-Luna. After being taken into administrative custody, Lopez-Luna admitted he was a citizen of Mexico, had entered the United States without authorization and was previously deported.

Lopez-Luna was charged with, and pled guilty to, one count of being an alien who unlawfully entered into the United States, in violation of 8 U.S.C. §§ 1325(a)(1), 1329, and who entered the United States without authorization after having been previously removed following a felony conviction, in violation of 8 U.S.C. § 1326(a), (b)(1).

## C. Presentence Investigation Report

3

The Presentence Investigation Report ("PSI") calculated a total offense level of 13, which included: (1) an 8-level increase, pursuant to U.S.S.G. § 2L1.2(b)(1)(C), because Lopez-Luna was previously deported after a conviction for an aggravated felony; and (2) a 3-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b). With a criminal history category of III, the PSI recommended an advisory guidelines range of 18 to 24 months' imprisonment.

Among other things, the PSI stated that Lopez-Luna: (1) was diabetic and needed medication to manage his diabetes; (2) financially supported his parents and one-year-old son in Mexico; (3) was illiterate and worked as a migrant farm laborer when in the United States; (4) had substance abuse problems and admitted using cocaine once a week and spending about $50 a week on drugs; (5) admitted staying with his parents in Mexico for only a short time before returning to the United States each time he was deported; and (6) repeatedly returned to the United States for financial reasons and to earn money to pay for his medication.

The PSI also noted that during several of Lopez-Luna's run-ins with the law, he used aliases, including Pablo Baltazar-Morales (for the 2007 bank fraud conviction) and Armando Baltazar Morales (for the 2008 burglary conviction), and that, according to Lopez-Luna's alien file, his true name was Sergio Lopez-

Baltazar. The Probation Officer stated that she was "unsure of the defendant's true identity based on the conflicting information provided by the defendant, compared to the information contained in his previous presentence report." The PSI cited as possible bases for an upward variance the confusion about Lopez-Luna's true identity and the need to deter Lopez-Luna given his "multiple re-entries." Lopez-Luna did not object to the PSI's facts or guidelines calculations.[1]

## D.    Sentencing

At sentencing, without objection, the district court adopted the PSI's facts and advisory guidelines calculations. In mitigation, Lopez-Luna argued that: (1) he "finally gets" that he cannot return to the United States again; and (2) he is poor, illiterate and has medical issues, including diabetes for which he needs daily medication. Lopez-Luna addressed the district court and explained that he returned to the United States because he did not earn enough money in Mexico to support his son and parents or to afford his medical treatment. Lopez-Luna pointed out that he had not committed a crime in the United States "this time." Lopez-Luna asked for a sentence within the advisory guidelines range.

---

[1]Lopez-Luna initially objected to some of his criminal history points, but withdrew the objection at the sentencing hearing.

The district court reviewed Lopez-Luna's criminal history and resulting sentences, stating that "[n]one of that has made any impression on you whatsoever." The district court noted that Lopez-Luna had in the past given fake names and birth dates to law enforcement. The district court then stated:

> You won't stay home to take care of your wife and your child. You won't stay home when you are given a year or so in prison. And when you come back into the United States, you don't even behave yourself because you, apparently, don't care whether you are caught or not. And the explanation you give is medication is cheaper here. You might have a little more money for medication if you weren't buying the cocaine and drinking all that liquor.

The district court asked Lopez-Luna whether he planned to "stay out of the country and not come back," to which Lopez Luna replied, "Well, no, now I won't be returning. If I'll be getting more time, then, no."

The district court imposed a 36-month sentence, twelve months above the high end of the advisory guidelines range, and stated:

> I have considered the policies and guidelines of the United States Sentencing Commission and, as well, the Advisory Guideline Range, which is derived from it. I have also considered the factors arrayed at § 3553(a) of Title 18.
> Honestly, I have strong doubts that this sentence is sufficient to accomplish the statutory purposes of sentencing. . . . I think most of the factors at 3553(a), it seems to me, would have commended a higher sentence, the nature and circumstances of the offense, which are - - it is the persistent pattern of violating sovereignty of the United States and the intent of the laws of the United States by intruding into the United States, despite repeated warnings, and then behaving in a criminal

6

manner persistently in the United States. The sentencing history of this Defendant suggests that he's probably oblivious to sentences in this range, but we'll try at this range once and see if it discourages his reappearance in the United States.

The district court acknowledged that Lopez-Luna's personal history was sympathetic, but noted that it was shared by many people around the world and did not entitle him to come to the United States and commit crimes. The district court concluded that it was "strongly doubtful" that even a 36-month sentence would be sufficient to deter Lopez-Luna, but expressed "hope that it has the intended effect." Lopez-Luna filed this appeal.

## II. DISCUSSION

On appeal, Lopez-Luna argues that his sentence is procedurally and substantively unreasonable. We review the reasonableness of a sentence for abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence. Id. Then, we examine whether the sentence is substantively unreasonable under the totality of the circumstances. Id. Lopez-

Luna bears the burden to show his sentence is unreasonable in light of the record and the § 3553(a) factors.[2] United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).

As to procedural reasonableness, Lopez-Luna contends the district court failed to consider the § 3553(a) factors in imposing his sentence. The record shows otherwise. The district court explicitly referred to the § 3553(a) factors and stated that they militated in favor of a sentence higher than the advisory guidelines range. The district court's reference to the § 3553(a) factors was sufficient. See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (explaining that the district court's acknowledgment that it has considered the § 3553(a) factors and the parties arguments is sufficient). Moreover, the district court adequately explained its chosen sentence and the need to deviate from the advisory guidelines range. See 18 U.S.C. § 3553(c)(2) (requiring district court to give reason for a variance from the advisory guidelines range); United States v. Livesay, 525 F.3d 1081, 1093 (11th Cir. 2008) (explaining that district court must explain why it has

---

[2]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

imposed a sentence outside the advisory guidelines "in a way that allows for meaningful appellate review").

Lopez-Luna argues that the district court's statements that it doubted the sufficiency of the sentence shows that the district court did not adhere to the statutory directive to impose a sentence "sufficient, but not greater than necessary," to comply the purposes of sentencing. See 18 U.S.C. § 3553(a). However, to the extent the district court expressed doubts about the sufficiency of the sentence, it was concerned, given Lopez-Luna's previous convictions and multiple deportations, that even a 36-month sentence might not be long enough to deter Lopez-Luna from reentering the United States and committing more crimes. Thus, there is nothing in the record to suggest the district court did not comply with this directive.

We also cannot say the district court's twelve-month upward variance was substantively unreasonable. Lopez-Luna was deported three times and each time he illegally reentered the United States. Twice while illegally in the United States, Lopez-Luna was convicted of serious financial fraud crimes–first bank fraud and then burglary and forgery. Despite having served a one-year prison sentence for the federal bank fraud conviction, Lopez-Luna was back in the United States committing the burglary and forgery offenses within four months of his

9

deportation. Given these circumstances, the district court concluded that a 36-month sentence was needed to deter Lopez-Luna from again reentering the United States. Lopez-Luna has not shown that the district court abused its discretion in imposing a 36-month sentence.

Lopez-Luna argues that the district court's 36-month sentence is substantively unreasonable because it failed to avoid an "unwarranted sentencing disparity." Lopez-Luna cites to United States v. Duarte-Cuautle, 2011 WL 521168 (11th Cir. Feb. 16, 2011), in which this Court affirmed as substantively reasonable the 37-month sentence of Francisco Duarte-Cuautle, who was convicted of illegal reentry under 8 U.S.C. § 1326(a) in an unrelated criminal case. Our Duarte-Cuautle opinion does not demonstrate that any sentencing "disparity" between Lopez-Luna and Duarte-Cuautle was unwarranted. Even assuming the two defendants had similar histories of crime and immigration violations (which, arguably, they did not),[3] we have repeatedly explained that there is a "range of reasonable sentences" from which a district court may choose. See Pugh, 515

---

[3]Duarte Cuautle was deported only twice and had one robbery conviction that was ten years old. Duarte-Cuautle, 2001 WL 521168 at *1. Lopez-Luna, on the other hand, was deported three times and had prior convictions for bank fraud, burglary, forgery, possession of forged notes and attempted burglary in the second degree that all occurred within the last four years.

F.3d at 1191. Nothing in <u>Duarte Cuautle</u> suggests Lopez-Luna's 36-month sentence lies outside that range.

**AFFIRMED.**