[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10848

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MATTHEW JAMES CHOY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cr-20165-CMA-1

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Matthew Choy appeals the procedural and substantive reasonableness of his sentence, and he also claims that the government broke a promise it made in the plea agreement. The district court sentenced Choy to 48 months in prison for sending violent interstate threats, deviating somewhat from the Sentencing Guidelines range of 33–41 months. We hold that the sentence was in all aspects reasonable. The government complied with the plea agreement, and the district court acted within its significant discretion when it imposed the higher sentence. We thus affirm.

## I.

After a falling out with two friends, Choy began sending them threats and harassing messages through Facebook. His messages were often replete with profanity and racial slurs, and he tormented his victims with threats of ghastly violence against them and their families. "I cant wait to fight and kill you"; "don't make me start killing families because that's next"; "next time im raping your [] sister and taking [her] apart with a chain"; "whatever im probably being investigated.. i dont care.. whatever happens happens.. but again.. id rather but if im going to jail someone is getting killed.. im not going to jail for anything less than murder"; "i havnt even thrown a punch yet and look what i can do"; "give [him] and knife and me a bottle.. we will see loser dies."

The two victims did what they could to protect themselves. Both reported the messages to local police and secured restraining orders against Choy. But Choy simply ignored those court orders and barraged them with more messages—for ten years. All told, he sent the victims over three thousand abusive messages.

Choy was eventually arrested. On that day, law enforcement discovered three large foldable knives stashed in the center console of Choy's car. This finding was troubling because of its similarity to one of Choy's earlier messages: "I HAVE A GUN AND KNIFE IN MY TRUCK FOR NO OTHER REASON THAN SLAUGHTER YOUR FRIENDS WHEN I SEE THEM I NEED TO RAPE AND KILL [them]." When agents searched the contents of his computer, they found a story Choy had written about a man finding his girlfriend cheating on him with a friend and then stabbing them to death. They also learned that Choy had run internet searches to find out where his victims lived.

Choy pleaded guilty to "intentionally transmitting in interstate commerce a communication that contained a threat to injure the person of another." *See* 18 U.S.C. § 875(c). For sentencing, the probation officer calculated an offense level of 22 and a criminal history category of I, which set a Guidelines range of 41–51 months. Choy objected, arguing that a 6-point enhancement for "conduct evidencing an intent to carry out such a threat" was not applicable. *See* U.S. Sentencing Guidelines § 2A6.1(b)(1). He also requested a 3-point reduction for acceptance of responsibility. *See id.* § 3E1.1.

At the sentencing hearing, the district court held that both the § 2A6.1(b)(1) enhancement and part of the § 3E1.1 reduction applied and thus calculated a lower offense level of 20 for a Guidelines range of 33–41 months. It then considered Choy's "history and characteristics," "the statements of the victims," "the nature of the criminal conduct," "the destruction that Mr. Choy's threatening words has wrought upon these two victims," the need to "promote respect for the law," and the need to deter Choy from "future threatening conduct" toward the victims. *See* 18 U.S.C. § 3553(a). And on those grounds the district court deviated from the Guidelines and imposed a 48-month sentence. Choy appeals.

## II.

We review whether a sentence is reasonable for abuse of discretion. *United States v. Livesay*, 525 F.3d 1081, 1090 (11th Cir. 2008). We first consider whether the district court committed procedural error—such as "failing to adequately explain the chosen sentence" or the "deviation from the Guidelines range," or giving "significant weight to an improper or irrelevant" § 3553(a) factor. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation omitted). We then ask whether the sentence is substantively reasonable. *Livesay*, 525 F.3d at 1091. Even if the sentence is above the Guidelines range, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* (quotation omitted).

### III.

Choy argues that (1) the district court failed to adequately explain its sentence, (2) considered an improper factor—rehabilitation—while sentencing him, (3) erred in applying the U.S.S.G. § 2A6.1(b)(1) conduct enhancement, and (4) announced a substantively unreasonable sentence. He also argues (5) that the government breached the plea agreement. None of his arguments withstand scrutiny.

### A.

Choy argues that the district court failed to adequately explain its sentence, claiming that it never divulged which path it took to sentence him outside the Guidelines—a variance or a departure. A variance occurs "when the court determines that a guidelines sentence will not adequately further the purposes reflected in 18 U.S.C. § 3553(a)" and relies on those factors to impose a different sentence. *United States v. Hall*, 965 F.3d 1281, 1295 (11th Cir. 2020). Departure is "a term of art" referring to a sentence based on one of the Guidelines provisions that allows a district court to depart from the default Guidelines range when additional criteria are met. *Id.* (quotation omitted). Either way, a district court's reasons for imposing an above-Guidelines sentence must be "sufficiently compelling to support the degree of the variance" or departure. *United States v. Harris*, 964 F.3d 986, 988 (11th Cir. 2020).

The district court here more than adequately justified its sentencing decision "to allow for meaningful appellate review." *Livesay*, 525 F.3d at 1090. Even though the court said that it was making "an upward departure from the advisory guideline range," it actually imposed both a departure and a variance. *See United States v. Kapordelis*, 569 F.3d 1291, 1316 (11th Cir. 2009). The district court clarified that it was granting the "upward departure" that the government had requested. And its reasoning reflected a conclusion that the § 3553(a) factors—mainly the need for deterrence and the need to protect the victims from Choy— demanded an upward variance. *See id.* When the court imposed the sentence, it considered Choy's history and characteristics, the nature of his criminal conduct, "the destruction that Mr. Choy's threatening words has wrought upon these two victims," and the need to deter Choy from threatening the victims. The district court thus sufficiently explained the deviation to allow for meaningful review. *See Harris*, 964 F.3d at 988–89.

## B.

Choy also argues that the district court considered an improper factor—his rehabilitation—when determining the length of his sentence. But he concedes that we review this issue only for plain error because he did not raise it below. Choy thus must identify (1) an error (2) that was plain and (3) that affected his substantial rights. *See United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). "If all three conditions are met, we then decide whether the error seriously affected the fairness, integrity,

or public reputation of judicial proceedings." *Id.* (alterations adopted and quotation omitted).

A district court may not consider "a defendant's rehabilitative needs when imposing or lengthening a prison sentence." *Id.* at 1309. This, of course, is not a total ban—the district court may discuss "the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs" during the sentencing hearing. *Id.* at 1311 (quoting *Tapia v. United States*, 564 U.S. 319, 334 (2011)). But it may not consider rehabilitation while determining the length of the sentence. *Id.*

When the district court explained why it was imposing a longer sentence it said, "Mr. Choy needs to be in a Bureau of Prisons facility receiving mental health treatment for a prolonged period of time without the ability of escape, and thereafter a 90-day residential program upon his release at a minimum to ensure that he does not further threaten these two victims." The district court was properly concerned about the possibility that Choy would "escape" and "further threaten" the victims. *See* 18 U.S.C. § 3553(a)(2)(C). But by discussing Choy's need for "mental health treatment for a prolonged period of time," the court improperly considered Choy's need for rehabilitation. *See United States v. Alberts*, 859 F.3d 979, 986 (11th Cir. 2017). And because this was prohibited by our precedent, the error was plain. *Id.*

But even if the district court improperly considered rehabilitation when fashioning Choy's sentence, Choy must also

show that this error affected his substantial rights. And he has not done so here. Under this third prong of plain-error review, Choy must show that the error "affected the outcome of the district court proceedings"; this often requires "a specific showing of prejudice." *Vandergrift*, 754 F.3d at 1312 (quoting *United States v. Olano*, 507 U.S. 725, 734–35 (1993). Choy argues that he "would have received a lighter sentence" if the district court had set aside the need for rehabilitation. But the facts do not support this conclusion.

For one, the district court did not mention rehabilitation when it pronounced Choy's sentence. It mentioned several other § 3553(a) factors and highlighted the gravity of "the destruction that Mr. Choy's threatening words has wrought upon these two victims." Beyond that, the court repeatedly voiced its concern that Choy needed to serve a longer sentence because he had incessantly threatened the victims' safety: "[F]rankly, I'm somewhat concerned whether [the 48-month sentence] is sufficient. I am not sure that Mr. Choy upon his release will not continue threatening these two victims." The district court's primary concerns in sentencing Choy were to protect the victims and to deter him from "future threatening conduct," so Choy has not shown that the district court would have imposed a shorter sentence if it had not considered his need for rehabilitation. *See Vandergrift*, 754 F.3d at 1312; *Alberts*, 859 F.3d at 986.

## C.

Choy's next claim is that the district court erred by relying on U.S.S.G. § 2A6.1(b)(1), which applies when a defendant not only

makes a threat but also commits "any conduct evidencing an intent to carry out" the threat.  For a court to consider a defendant's pre-threat conduct, there must be "a substantial and direct connection" between that conduct and the threat.  U.S.S.G. § 2A6.1(b)(1) app. n.1; *United States v. Taylor*, 88 F.3d 938, 943 (11th Cir. 1996).

But we need not decide whether Choy intended to act on his threats.  The district court said that "the sentence I am announcing would be the same regardless of whether" § 2A6.1(b)(1) "applied or not."  Without the enhancement, Choy's offense level would have been 14, with a Guidelines range of 15–21 months.  Because the district court would have imposed the same sentence based on the lower Guidelines range, any error it made in applying § 2A6.1(b)(1) was harmless.  *See United States v. Keene*, 470 F.3d 1347, 1348–49 (11th Cir. 2006).  The question therefore is whether (after setting aside § 2A6.1(b)(1)) the sentence is substantively reasonable, which we address below. *Id.* at 1349.

## D.

Choy also claims that his sentence was substantively unreasonable.  But to support that claim he only repurposes procedural arguments—that the district court failed to adequate explain the deviation from the Guidelines and that it improperly relied on Choy's need for rehabilitation to do so.  And the fact that the district court imposed a variance above the Guidelines "carries no presumption of unreasonableness." *Irizarry v. United States*, 553 U.S. 708, 714 (2008).  Instead, a sentence is substantively unreasonable only when we are "left with the definite and firm

conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors" and thus arrived "at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotation omitted).

We are left with no such conviction here. The district court did not abuse its discretion when it concluded that the Guidelines range did not reflect the severity of Choy's actions and that Choy's behavior revealed that he still posed a threat to the two victims. And even though his 48-month sentence is more than double the Guidelines range without the § 2A6.1(b)(1) enhancement, the court had discretion to assess the § 3553(a) factors and conclude that more time was necessary to protect the victims and to deter him from further threatening behavior. *See Harris*, 964 F.3d at 989. Choy's sentence was thus substantively reasonable.

## E.

Lastly Choy argues that the government breached the plea agreement when it refused to recommend a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. But the government points out that its promise to make that recommendation carried a condition: Choy could not commit "any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official."

The parties dispute whether several emails Choy sent after signing the plea agreement constituted "misconduct." When interpreting the meaning of a disputed term in a plea agreement, we review the agreement de novo, applying "an objective standard" to "decide whether the government's actions" were "inconsistent with what the defendant reasonably understood when he entered his guilty plea." *United States v. Copeland*, 381 F.3d 1101, 1104, 1105 (11th Cir. 2004) (quotation omitted). If a term is ambiguous, we interpret it against the government to ensure that the defendant was "adequately warned of the consequences of the plea." *Id.* at 1105–06 (quotation omitted). But when the terms are clear, we apply only "the unambiguous meaning of the language in the agreement." *Id.* at 1106.

In those his messages to family and friends—which Choy knew were monitored—he said, "HEY FBI ILL TRADE YOU A MANSLAUGHTER PLEA FOR THE OPPORTUNITY TO KILL THE VICTIM.. EACH PERSON GETS A KNIFE, LOSER DIES..YOU GET ME IN JAIL EITHER WAY..THINK ABOUT IT." A few days later he said, "I WANT WHAT'S OWED TO ME AND IF I CANT GET IT NOW. FINE BUT WHEN I SEE [the victim] AGAIN, ITS GOING TO HAPPEN WHETHER HE'S READY OR NOT." And two weeks later, "I TOTALLY ACCEPT RESPONSIBILITY FOR THE ONE THREAT, WHAT I DON'T HAVE IS REMORSE!! THIS SHOULD BE HANDLED THROUGH MUTUAL COMBAT AND IT WILL WHEN I GET OUT." The messages left no doubt that Choy had not withdrawn

from criminal conduct and instead intended to harm the victims when he was released.

Choy argues that he fulfilled his end of the bargain because the emails did not constitute "criminal conduct." But the terms of the plea agreement are quite clear that it prohibited more "misconduct" than violations of criminal law. Choy communicated to the government that he intends to kill one of his victims when he is released, and that qualifies as misconduct. Nor can Choy avoid this fact by arguing that the government cannot fault him for these statements because he had sent similar emails before. The government did not improperly rely "solely on facts of which it was aware prior to entering the plea agreement." *See United States v. Hunter*, 835 F.3d 1320, 1326 (11th Cir. 2016). When Choy signed the plea agreement, he committed to refraining from any future misconduct, and he broke that promise. The government thus was not obligated to recommend the § 3E1.1 reduction.

★    ★    ★

Choy's sentence is reasonable, and the government heeded the plea agreement.

**AFFIRMED.**