**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13373

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DOMINGO ANTONIO PENA ALBA,
a.k.a. Antonio Garcia Alba,
a.k.a. Antonio Garcia,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20156-WPD-1

_____

Before JORDAN, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Domingo Antonio Pena Alba appeals his sentence of 85 months' imprisonment for illegal reentry of a removed alien. *See* 8 U.S.C. §§ 1326(a), (b)(2). Pena Alba argues that this sentence, which represents an upward variance of 28 months, is substantively unreasonable. Specifically, he contends that the district court created an unwarranted sentencing disparity between Pena Alba and similarly situated defendants and did not consider or give adequate weight to the relevant sentencing factors. Because the district court did not abuse its discretion in sentencing Pena Alba to 85 months' imprisonment, we affirm.

**I.**

Pena Alba is a citizen of the Dominican Republic. In 2002, he was convicted of loitering, and in 2004 he was convicted of attempted sale of a controlled substance. Almost one year later, Pena Alba was convicted of disorderly conduct, and in 2005, he was convicted of several drug trafficking felonies. He was sentenced to 38 months' imprisonment.

In 2008, immigration officials deported Pena Alba, but he later reentered the country despite failing to obtain the express consent of the Attorney General of the United States or the Secretary for the Department of Homeland Security. In 2011, Pena Alba was again charged and convicted of drug trafficking felonies and was sentenced to two years' imprisonment.

In 2017, immigration officials deported Pena Alba for the second time. He reentered the country about six months later, but the United States Border Patrol arrested him. He was charged and

convicted of reentry of a deported alien, and he was sentenced to 84 months' imprisonment.

Immigration officials deported Pena Alba for the third time in 2023, but he again reentered the country illegally.

On April 2, 2024, law enforcement stopped a van in which Pena Alba was riding with eight other people along the Florida turnpike in Miami-Dade County. A grand jury indicted four of the nine people in the van, including Pena Alba. Pena Alba was charged with reentry of a removed alien, in violation of 8 U.S.C. § 1326(a) and (b)(2). The indictment noted that Pena Alba had been removed from the United States three times—in 2008, 2017, and 2023. Pursuant to a plea agreement, he pleaded guilty to a single count.

Consistent with the United States Sentencing Guidelines § 2L1.2(a), the Presentence Investigation (PSI) calculated a base offense level of eight based on Pena Alba's conviction under 8 U.S.C. § 1326(a) and (b)(2). The PSI then applied an enhancement of four levels because he had sustained the conviction after a prior illegal entry offense. *See* U.S.S.G. § 2L1.2(b)(1)(A). In addition, the PSI applied an enhancement of eight levels due to Pena Alba's prior conviction for which he had received a sentence of two years or more after being deported. *See id.* § 2L1.2(b)(3)(B). Then, the PSI applied a reduction of two levels for acceptance of responsibility and a reduction of one level for timely notifying the government of his intention to plead guilty, yielding a total offense level of 17. *See id.* § 3E1.1(a), (b).

When calculating Pena Alba's criminal history, the PSI added three points for his drug convictions in 2011, three points for reentry of a removed alien in 2012, and three points for reentry of a removed alien in 2017, yielding a subtotal of nine points. Pena Alba's other convictions for loitering, attempted criminal sale of a controlled substance, disorderly conduct, conspiracy to distribute and possess with intent to distribute cocaine and heroin, and possession of a firearm in furtherance of narcotics trafficking were too old to contribute to his score. The PSI added one point because Pena Alba's points under section 4.1.1(a) through (d) totaled seven or more points and because Pena Alba committed the instant offense while under a criminal sentence. His ten points resulted in a criminal history score of V.

Based on the above, Pena Alba's guideline range was 46 to 57 months with a one- to three-year term of supervised release. *See* 18 U.S.C. § 3583(b)(2). Pena Alba's conviction carried a 20-year statutory maximum sentence. U.S.S.G. § 5D1.2(a)(2).

The PSI also provided information about the other three men who were arrested with Pena Alba and who were also charged with illegal reentry. One of these men, Victor Conce Valerio, had previously been deported for an aggravated felony and had prior drug and other offenses. The PSI did not provide Valerio's guideline range, but it did indicate that he had been sentenced to time served and one year of supervised release. The second man, Andres Joamir Sosa Ramos, had previously been deported as an aggravated felon. The PSI did not provide his guideline range, but it did

indicate that he had been sentenced to time served and one year of supervised release. The third man, Robert German Maldonado, had previously been deported twice and had prior offenses of drug possession and being a fugitive. Maldonado was sentenced to 18 months from a guideline range of 21 to 28 months.

Neither side objected to the PSI, although the prosecution moved for an upward variance of 66 months. The prosecution argued that serving over 16 years in prison had not deterred Pena Alba from criminal conduct and that the Guidelines only accounted for one four-level offense increase despite Pena Alba's two reentry convictions. Pena Alba expressed remorse and explained that he had reentered the country because his granddaughter in Boston was sick. He declined the court's offer to withdraw his guilty plea so he could raise these circumstances as an emergency defense.

Pena Alba's counsel argued that the court should sentence him similarly to the other three defendants with whom he had been arrested. He compared the criminal histories of those defendants to Pena Alba, describing that Valerio had previously been deported for an aggravated felony, drug offenses, sexual contact with a minor less than fourteen years old, and child welfare endangerment. Next, he highlighted that Maldonado had been deported twice and had prior offenses of drug possession and being a fugitive. Finally, he noted that Sosa Ramos had previously been deported as an aggravated felon (although the prosecution later disputed this assessment by stating that Sosa Ramos had "zero criminal history"). Pena Alba's counsel then asked for a sentence of only

24 months, but not more than 36 months (reasoning that this was double the sentence that Maldonado had received).

The district court imposed a sentence of 85 months' imprisonment to be followed by three years of supervised release. This was a 28-month upward variance from the Guidelines range. The district court found that Pena Alba was not similarly situated to the other three defendants and that imposing a lower sentence on Pena Alba would amount to a windfall for him. The district court added that it considered the mitigating circumstances of Pena Alba pleading guilty and having an ill family member, as well as the aggravating circumstances of his criminal history and interactions with previous sentencing courts. In particular, the district court highlighted that Pena Alba had promised the most recent sentencing court that he would not return to the United States. The district court judge then noted that because Pena Alba's previous sentence of 84 months was not enough to deter him from illegal reentry, an appropriate sentence would be 85 months with three years of supervised release.

Pena Alba appealed.

## II.

"We review 'all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard.'" *United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). A district court has considerable discretion in sentencing and "imposes a substantively unreasonable sentence only when it

24-13373                    Opinion of the Court                    7

(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (quotation marks and citation omitted). The party challenging the sentence bears the burden of proving that it is unreasonable based on the facts of the case and the section 3553(a) factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018).

## III.

Pena Alba argues that his sentence is substantively unreasonable for two reasons: first, he says it creates a "gross and unfair sentencing disparity" when compared with the other three defendants arrested at the same time as Pena Alba, and second, he says the district court failed to meaningfully consider the 18 U.S.C. § 3553(a) sentencing factors.

In determining its sentence, the district court must make an "individualized assessment" based on the facts of each case. *Gall*, 552 U.S. at 50. In doing so, a district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Livesay* 525 F.3d 1081, 1090 (11th Cir. 2008). "When reviewing a sentence imposed outside of the Guidelines range, we 'may consider the extent of the deviation, but must give due deference to the district court's decision that the 18 U.S.C. § 3553(a) factors, on a whole, justify the extent of the variance.'" *United States v. Butler*, 39

F.4th 1349, 1355 (11th Cir. 2022) (quoting *Gall*, 552 U.S. at 51) (alterations accepted). We have held that the district court must consider all relevant 18 U.S.C. § 3553(a) factors, but "the weight given to each factor is committed to the sound discretion of the district court," which may greatly weigh one factor over the others. *Id.* Further, affording mitigating factors less weight than a defendant contends they deserve does not make a sentence unreasonable. *United States v. Lebowitz*, 676 F.3d 1000, 1016–17 (11th Cir. 2012).

When considering the need to avoid unwarranted sentencing disparities, we first evaluate "whether the defendant is similarly situated to the defendants to whom he compares himself." *United States v. Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015). A well-founded claim of unwarranted disparity between sentences "assumes that apples are being compared to apples." *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quotation marks and citation omitted). No unwarranted sentencing disparity exists when the defendant and his proposed comparators are not similarly situated. *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015).

We begin with Pena Alba's first argument. In his view, Valerio, Sosa Ramos, and Maldonado were similarly situated to him because they were arrested at the same time and had similar criminal records. He contends that it was unjust to make his sentence more than four times as long as the sentence of the most similar defendant, Maldonado. The United States argues that Pena Alba's counsel failed to develop the record to argue that there was a

sentencing disparity and describes the comparison to the three other defendants as "apples-to-oranges."

The district court did not abuse its discretion in finding that Valerio, Sosa Ramos, and Maldonado were not similarly situated to Pena Alba. Pena Alba had three previous deportations, a guideline range of 46 to 57 months, and multiple prior convictions for drug possession and trafficking as well as illegal reentry. Unlike Pena Alba, Valerio and Sosa Ramos had only one previous deportation, and apart from listing their prior criminal offenses, the PSI does not reflect their guideline range or any other information that would have aided the district court in comparing them to Pena Alba. For his part, Maldonado had two previous deportations, a lower guideline range of 21 to 28 months, and a prior conviction of drug possession and being a fugitive. We cannot say that the district court abused its discretion in imposing a higher sentence on Pena Alba.

Moving to Pena Alba's second argument, Pena Alba argues that, although the district court acknowledged several mitigating factors, it did not adequately engage with those factors to the extent that *United States v. Livesay* requires. *See* 525 F.3d 1081 (11th Cir. 2008). We disagree. *Livesay* directs that a district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Livesay* 525 F.3d at 1090. The district court did so. The district court explained that it considered the mitigating circumstances of Pena Alba pleading guilty and having an ill family member. But as the

district court highlighted at sentencing, Pena Alba had promised at his last sentencing for illegal reentry that he would not return to the United States. The district court reasoned that because Pena Alba renegued on this promise, his previous sentence of 84 months was too short to deter future illegal reentry. The need to deter criminal conduct and the "history and characteristics of the defendant" are section 3553(a) factors that a sentencing court must consider. *See* 18 U.S.C. § 3553(a)(1), (2)(B). The district court therefore sufficiently considered the relevant section 3553(a) factors and explained its sentence to allow for meaningful appellate review.

We conclude that the district court acted within its discretion in finding that Pena Alba was not similarly situated to his proposed comparators, giving great weight to the need to deter future criminal conduct, and giving less weight to his mitigating factors.

## IV.

For these reasons, the district court's judgment is **AFFIRMED**.